**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

PATRICIA BOLONE,

    Plaintiff,                                Case No. 11-10663

v.                                            Hon. Lawrence P. Zatkoff

WELLS FARGO HOME MORTGAGE, INC., and
FEDERAL HOME LOAN MORTGAGE CORP.,

    Defendants.
_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on August 16, 2011.

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I. INTRODUCTION**

This matter is before the Court on Plaintiff's Motion for Temporary Restraining Order ("TRO") and Preliminary Injunction [dkt 11]. On July 21, 2011, the Court granted Plaintiff a TRO, enjoining and restraining Defendants from evicting Plaintiff from her home, and set a hearing on Plaintiff's request for a preliminary injunction on August 11, 2011, at 10:30 a.m. The parties were also ordered to file responses with the Court, addressing whether a preliminary injunction should issue, and whether the Court should hold the parties' counsel in civil contempt. Plaintiff filed a response to the Court's order, and Defendants filed a response to Plaintiff's motion, in which Plaintiff filed a reply. The hearing for the preliminary injunction was adjourned due to Defendants' counsel's failure to appear, and the Court finds that the facts and legal arguments are adequately

presented in the parties' papers such that the decision process would not be significantly aided by oral argument. Therefore, pursuant to E.D. Mich. L. R. 7.1(f)(2), it is hereby ORDERED that the motion be resolved on the brief submitted. For the reasons set forth below, Plaintiff's request for a Preliminary Injunction is GRANTED.

## II. BACKGROUND

In July of 2003, Plaintiff, Patricia Bolone, refinanced a mortgage on her home at 2886 Genes Drive, Auburn Hills, Michigan, with Defendant Wells Fargo Home Mortgage, Inc. ("Wells Fargo"). Plaintiff subsequently lost her employment in 2007, and as of February of 2009, no longer made payments to Wells Fargo. On June 1, 2009, she applied for a loan modification. Effective April 1, 2010, Wells Fargo offered a Home Affordable Modification Program ("HAMP") Trial Period Plan ("TPP") to Plaintiff. The TPP consisted of three monthly installment payments of $403.00 from April to June. Plaintiff purportedly returned the necessary paperwork and signed a written agreement indicating the terms of the TPP with a representative of Wells Fargo. Pursuant to the TPP, Plaintiff was entitled to a permanent modification of her mortgage:

> If I am in compliance with this Loan Trial Period and my representations in Section 1 continue to be true in all material respects, then the Lender will provide me with a Loan Modification Agreement, as set forth in Section 3, that would amend and supplement (1) the Mortgage on the Property, and (2) The Note secured by the Mortgage.

The TPP also restricted Wells Fargo's ability to foreclose on the property, stating "the Lender will suspend any scheduled foreclosure sale, provided I continue to meet the obligations under this Plan . . . ."

Despite the conclusion of the TPP in June, Wells Fargo continued to accept a monthly payment of $403 for the months of July and August of 2010. Wells Fargo, however, did not deny

a permanent modification until July 30, 2010, when it then notified Plaintiff by letter that she was denied a permanent modification for failing to provide requested documents. On August 10, 2010, Wells Fargo sold Plaintiff's home at a sheriff's sale, which was purchased by Defendant Federal Home Loan Mortgage Corp. ("Freddie Mac"). The redemption period following the sheriff's sale has run and Plaintiff is now at risk of being evicted from her home.

Plaintiff asserts three claims against Defendants: (Count I) breach of the TPP; (Count II) violation of the Michigan Collection Practices Act ("MCPA"), M.C.L. § 445.251, *et seq.*; and (Count III) conversion by defective foreclosure. In her Complaint, Plaintiff essentially seeks to restrain Defendants from further adverse actions against her, rescission of the sheriff's sale, actual damages, and require Defendants to fulfill the TPP. As the Court explained in its July 21, 2011, order granting Plaintiff a TRO, a recitation of the procedural background of this case is important:

> Plaintiff filed her cause of action with the Oakland County Circuit Court on or about February 4, 2011, at which time she also filed a motion for temporary restraining order, show cause order and preliminary injunction. On February 17, 2011, before Defendants had been served in this matter and following a hearing held on February 16, 2011, Judge Denise Langford Morris **granted** Plaintiff's motion for a temporary restraining order and entered an order that stated, in part:
>
>> 1. Defendants are hereby ordered not to take any action to evict Plaintiff pending Plaintiff's hearing on the preliminary injunction.
>>
>> 2. Defendants shall show cause before this [Oakland County Circuit] Court on March 16, 2011 at 8:30 a.m. why a preliminary injunction should not be ordered to remain in effect during the pendency of this action according to the terms and conditions requested by Plaintiff.
>
> After being served with the Complaint, Defendants properly removed Plaintiff's cause of action to this Court on February 17, 2011. Prior

>to the filing of the instant motion, neither Plaintiff nor Defendants: (a) filed a copy of the state court's February 17, 2011, order with the Court, (b) indicated to the Court that a preliminary injunction hearing had been scheduled but not held in Oakland County Circuit Court, or (c) requested that this Court hold a hearing or otherwise address the subject matter of the motion for injunctive relief filed by Plaintiff on February 4, 2011. In May or June 2011, Defendants allegedly filed an action in the 52-3 District Court in Rochester Hills, Michigan, wherein Defendants allegedly sought to evict Plaintiff from her residence. The 52-3 District Court adjourned the matter to allow Plaintiff to seek relief in this Court pursuant to this earlier-filed cause of action.

The Court issued Plaintiff a TRO based on: (1) Plaintiff's arguments within her brief; (2) the state court had granted a TRO; and (3) the TRO granted by the state court was in effect at the time this case was removed. In granting Plaintiff a TRO, the Court set forth the following orders:

>(1) Defendants may not take any action to evict Plaintiff until a further order by this Court;
>
>(2) Defendants shall file a response why a preliminary injunction should not issue;
>
>(3) Plaintiff's counsel is to file a response addressing why Plaintiff's counsel should not be held in civil contempt for failing to bring to the attention of this Court that the state court had issued a TRO; and
>
>(4) Defendants are to file a response why they should not be held in civil contempt for defying the state court's TRO by filing a cause of action in the 52-3 District Court.

The parties have fully complied with the Court's Order.

### III. LEGAL STANDARD

A court is to consider the following four factors in determining whether a plaintiff is entitled to preliminary injunctive relief:

(1)  whether the movant has shown a strong or substantial likelihood or probability of success on the merits;

(2)　　whether the movant has shown that he or she would suffer irreparable harm if the preliminary relief is not issued;

(3)　　whether the issuance of a preliminary injunction will not cause substantial harm to third parties; and

(4)　　whether the public interest would be served by the issuance of a preliminary injunction.

*Sandison v. Mich. High Sch. Athletic Ass'n, Inc.*, 64 F.3d 1026, 1030 (6th Cir. 1995); *UASCO Coal Co. v. Carbomin Energy, Inc.*, 689 F.2d 94, 98 (6th Cir. 1982); *Mason Cnty. Med. Ass'n v. Knebel*, 563 F.2d 256, 261 (6th Cir. 1977). The standard for preliminary injunction is not a rigid and comprehensive test, and the four factors are to be balanced, not prerequisites that must be satisfied, but instead "these factors simply guide the discretion of the court; they are not meant to be rigid and unbending requirements." *In re Eagle-Picher Indus., Inc.*, 963 F.2d 855, 859 (6th Cir. 1992). Accordingly, a party "is not required to prove his case in full at a preliminary injunction hearing and the findings of fact and conclusions of law made by a court granting the preliminary injunction are not binding at trial on the merits." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981).

## IV. ANALYSIS

### A. LIKELIHOOD OF SUCCESS ON THE MERITS

Under the first factor, a plaintiff must establish the likelihood of success on the merits by showing "more than a mere possibility of success." *Six Clinics Holding Corp. v. Cafcomp Sys., Inc.*, 119 F.3d 393, 402 (6th Cir. 1997) (citing *Mason County Med. Ass'n v. Knebel*, 563 F.2d 256, 261 n.4 (6th Cir. 1977)). "[I]t is ordinarily sufficient if the plaintiff has raised questions going to the merits so serious, substantial, difficult, and doubtful as to make them a fair ground for litigation and thus for more deliberate investigation." *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 543 (6th Cir. Mich. 2007) (citations omitted).

In establishing the first factor, Plaintiff contends that she has a likelihood of success on showing that: (1) Defendants' denial of a permanent modification breached the obligations of the TPP; and (2) the MCPA is applicable to "Defendant" because it is not excluded under the MCPA as a "depository financial institution."[1] Defendants argue that: (a) the Anti-Injunction Act precludes the Court from entering a preliminary injunction; (b) HAMP and its guidelines do not provide for a private right of action that permits Plaintiff to sue for failing to modify her loan; and (c) Plaintiff's claims under the MCPA are inapplicable to Defendants.

### *i. Anti-Injunction Act*

As an initial matter, Defendants raised in their response brief that the Anti-Injunction Act precludes this Court from issuing a preliminary injunction. The Anti-Injunction Act states, "[a] court of the United States may not grant an injunction to stay *proceedings in a State court* except as [1] expressly authorized by Act of Congress, or [2] where necessary in aid of its jurisdiction, or [3] to protect or effectuate its judgments." 28 U.S.C. § 2283 (emphasis added). The term "proceedings" as used in the Act include "all steps taken or which may be taken in the state court or by its officers from the institution to the close of the final process." *Tropf v. Fidelity Nat. Title Ins. Co.*, 289 F.3d 929, 941–42 (6th Cir. 2002) (citing *Hill v. Martin*, 296 U.S. 393, 403 (1935)). A foreclosure by advertisement, the process used by Defendants here, is not recognized by Michigan courts to be a judicial state court procedure. *Moss v. Keary*, 231 Mich. 295, 299 (1925) (stating that a foreclosure by advertisement is "an ex parte non-judicial proceeding, based on contract and authorized by the mortgagor").

---

[1] Plaintiff does not indicate which Defendant she is referring to when she contends that the MCPA is applicable.

Defendants cite several cases showing that other courts have abstained from issuing injunctions in circumstances involving foreclosure proceedings. Plaintiff responds that the sheriff's sale is a non-judicial proceeding and that the Anti-Injunction Act is inapplicable. After review of Defendant's cited legal authority, all of the courts were addressing foreclosure proceedings initiated in the state court. The courts do not appear to have been presented with Michigan's foreclosure by advertisement statute. Under Michigan law such foreclosures are non-judicial and do not involve state action for purposes of the due process clause. *Mfgs. Hanover Mortg. Corp. v. Snell*, 142 Mich. App. 548, 552–53 (1985) (citing *Northrip v. Fed. Nat'l Mortg. Ass'n*, 527 F.2d 23 (6th Cir. 1975), and *Cramer v. Metro. Savs. & Loan Ass'n*, 401 Mich. 252, 259 (1977)). Because such proceedings are non-judicial, the Court finds that Defendants' foreclosure by advertisement would not qualify as a "[proceeding] in a State Court." *See Rea v. Wells Fargo Home Mortgage*, No. 09-12611, 2009 WL 2750935, at * 7 (E.D. Mich. Aug. 25, 2009) (concluding after a thorough review of Michigan statutes and case law that "the foreclosure by advertisement . . . or non-judicial foreclosure proceeding . . . is not a proceeding in a State court for the purposes of the Anti-Injunction Act"). As such, the Anti-Injunction Act is inapplicable to this case, and the Court proceeds to the merits of Plaintiff's claim.

### *ii. Breach of the TPP*

For Plaintiff to state a breach of contract claim, the TPP must meet the essential elements of a contract. *In re Brown*, 342 F.3d 620, 628 (6th Cir. 2003). A contract requires parties competent to contract, proper subject matter, legal consideration, mutuality of agreement, and mutuality of obligation. *Hess v. Cannon Twp.*, 696 N.W.2d 742, 748 (Mich. Ct. App. 2005). After showing that a valid contract exists, the plaintiff must show: (1) the terms of the contract, (2) a breach of one or

more of those terms, and (3) the injury to the plaintiff caused by the breach. *Timmis v. Suzler Intermedics, Inc.*, 157 F. Supp. 2d. 775, 777 (E.D. Mich. 2001) (citing *Webster v. Edward D. Jones & Co., L.P.*, 197 F.3d 815, 819 (6th Cir. 1999)).

Plaintiff argues that Defendants and Plaintiff entered a written agreement—the TPP. Plaintiff maintains that she adhered to the TPP, as opposed to Defendants, who at the end of the TPP denied her a permanent modification and began foreclosure proceedings on her home. Plaintiff asserts that Defendants simply breached the contract.

Defendants counter Plaintiff's breach of contract claim with the assertion that Defendants were not required to provide Plaintiff a HAMP loan modification under HAMP or its regulations. Defendants further assert, even assuming HAMP does have such a requirement, that HAMP does not provide for a private right of action against lenders who begin foreclosure proceedings without providing for a loan modification. Defendants support their assertion with *Hart v.Country Wide Home Loans*, *Inc.*, 735 F. Supp. 2d 741, 747–48 (E.D. Mich. 2010), along with eleven other cases from various jurisdictions, which held that HAMP does not provide for a private right of action.

After reviewing Defendant's cited legal authority, the Court finds that it is distinct from the instant case and that Plaintiff establishes a likelihood of success on her breach of contract claim. *See Six Clinics Holding Corp.,* 119 F.3d at 402. First, in *Hart*, the plaintiff was alleging that the defendant should have modified her loan according to the language in HAMP. 735 F. Supp. 2d at 746–47. In *Hart*, similar to Defendants' other cited legal authority, the court held that the plaintiff could not bring a cause of action under HAMP to require modification of the mortgage. *Id.* at 748. Contrary to the plaintiff in *Hart*, Plaintiff and Wells Fargo actually entered into a TPP. According to the language in the TPP, Wells Fargo would permanently modify Plaintiff's mortgage if she

complied with the terms of the TPP. Also contrary to the plaintiff in *Hart*, Plaintiff is asserting that Wells Fargo breached the terms of the TPP by not permanently modifying her loan, rather than asserting that Wells Fargo violated the HAMP guidelines. Defendants also have not shown that HAMP would preempt Plaintiff from asserting a breach of the TPP.

Second, Plaintiff shows a substantial likelihood of establishing the essential elements of her breach of contract claim. Plaintiff has shown the existence of a valid contract, the TPP; that Defendants allegedly breached terms of that contract by failing to permanently modify her mortgage; and as a result Plaintiff suffers the risk of being evicted from her home. *See Bosque v. Wells Fargo Bank*, 762 F. Supp. 2d 342, 351–52 (D. Mass. Jan. 26, 2011) (finding that trial modification plans are valid contracts supported by consideration due to additional conditions in the TPP that were imposed on a plaintiff). Plaintiff also has shown that she made the required TPP monthly payments and purportedly followed the other terms in the TPP. Defendants fail to refute that they did not receive and accept monthly TPP payments for the months of April, May, and June; additional monthly payments for the months of July and August after the TPP expired; or that Plaintiff breached the terms of the TPP. Moreover, the language in the TPP provides that Defendants will suspend any foreclosure proceedings while Plaintiff is in compliance with the TPP. As such, the Court finds that Plaintiff has shown a likelihood of success on the merits with respect to her breach of contract claim. *See Williams v. Geithner*, No. 09-1959, 2009 WL 3757380, at *3 (D. Minn. Nov. 9, 2009) (finding that "[i]f the borrower remains current throughout the trial period, the servicer must then provide a loan modification"); *Wells Fargo v. Meyers*, 913 N.Y. S. 2d. 500, 504 (Nov. 10, 2010) (finding that homeowners that complied with all requirements of a trial modification plan were entitled to compelling specific performance of the modification agreement by Wells Fargo).

Having determined that Plaintiff has, at least a likelihood of success on one of her Counts, the Court need not address the merits of Plaintiff's Counts II and III. Plaintiff's likelihood of success on her breach of contract claim is sufficient to satisfy this factor.

**B. IRREPARABLE INJURY**

The Court next considers whether Plaintiff will suffer irreparable injury without the injunction. *Certified Restoration Dry Cleaning*, 511 F.3d at 550. A plaintiff's harm is irreparable if "it is not fully compensable by monetary damages." *Overstreet v. Lexington-Fayette Urban County Gov't*, 305 F.3d 566, 578 (6th Cir. 2002); *see Basicomputer Corp. v. Scott*, 973 F.2d 507, 511–12 (6th Cir. 1992) ("The loss of customer goodwill often amounts to irreparable injury because the damages flowing from such losses are difficult to compute.").

Here, the Court finds that the harm Plaintiff would incur is irreparable harm, as the foreclosure proceedings will cause Plaintiff to lose her home. Despite Defendants' contentions that she can be compensated, the Court does not find that the loss of one's home is fully compensable by money damages. *See Smith v. State Farm Fire & Cas. Co.*, 737 F. Supp. 2d 702, 714 (collecting cases that hold "in certain circumstances the threat of eviction and the realistic prospect of homelessness constitute a threat of irreparable harm") (citations omitted). Defendants also assert that Plaintiff is only seeking compensatory damages. The Court acknowledges that Plaintiff does seek such relief, however, a plain reading of Plaintiff's Complaint indicates that she also seeks rescission of the sheriff's sale and specific performance of the TPP. Thus, this factor weighs in favor of Plaintiff.

**C. SUBSTANTIAL HARM TO OTHERS**

The Court must also consider "whether the issuance of the injunction would cause

*substantial* harm to others." *Tumblebus Inc. v. Cranmer*, 399 F.3d 754, 760 (6th Cir. 2005). Plaintiff contends there is minimum harm to others. With respect to Defendants, Plaintiff asserts that her home will remain subject to the mortgage and if she does not succeed then Defendants will be able to foreclose on her home. Plaintiff also indicates that if she succeeds on enforcing the TPP then she will be required to make monthly payments to Defendants under a permanent modification. Defendants refute none of Plaintiff's assertions, and neither party raises any additional concerns with respect to non-parties. Based upon the record before the Court, this factor also seems to weigh in favor of Plaintiff.

### D. PUBLIC INTEREST

The Sixth Circuit has determined that the enforcement of contractual covenants is in the public interest. *Certified Restoration Dry Cleaning*, 511 F.3d 535. Plaintiff contends that maintaining the status quo best serves the public interest because it allows homeowners to avoid homelessness when they are unable to make payments to their lender due to circumstances beyond their control. Defendants do not address Plaintiff's contention, and Plaintiff provides no legal authority to support it. In reviewing her claim, the Court agrees that it is in the public interest to enforce a TPP entered into between a homeowner and lender. If the Court were to decline to enforce similar agreements, borrowers and lenders would see such trial modification plans as futile. The Court, however, disagrees with Plaintiff that it is in the public interest to allow her to remain in her home solely because of her failure to make the payments on her mortgage, which she knowingly entered, due to her unemployment. Therefore, this factor weighs in favor of neither party.

### V. CIVIL CONTEMPT OF COURT

The Court's July 21, 2011, order also required both parties to file a response why this Court

should not hold them in civil contempt for failing to inform the Court about the state court's TRO.

In the Sixth Circuit, "[c]ivil contempt sanctions are designed to enforce compliance with court orders and to compensate injured parties for losses sustained." *Downey v. Clauder*, 30 F.3d 681, 685 (6th Cir. 1994). Typically, there must be a showing that the respondent "violated a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order." *Glover v. Johnson*, 934 F.2d 703, 707 (6th Cir. 1991) (citation omitted). As here, where the case has been removed from state court, "All injunctions, orders, and other proceedings had in such action prior to its removal shall remain in full force and effect until dissolved or modified by the district." 28 U.S.C. § 1450. However, the state court lacks jurisdiction to proceed any further after it has received a copy of the notice of the removal. 28 U.S.C. § 1446(d).

**A. DEFENDANTS**

Defendants assert that they should not be held in civil contempt of this Court because the state court TRO expired fourteen days after February 17, 2011—the date the TRO was ordered—and Defendants did not file a proceeding in the 52-3 District Court until May 6, 2011. Although Defendants' actions fail to signify professionalism, Defendants have not violated the state court's order because the state court TRO expired, at a minimum, 14 days after the state court judge ordered it. According to either M.C.R. 3.310(B)(3) or Fed. R. Civ. P. 65(b), an ex parte TRO expires at a time not to exceed 14 days, unless the court extends it. M.C.R. 3.310(B)(3) (stating "Except in domestic relations actions, a temporary restraining order granted without notice expires by its terms within such time after entry, not to exceed 14 days"); Fed. R. Civ. P. 65(b) (stating "Every temporary restraining order granted without notice . . . expires at the time after entry—not to exceed

14 days—that the court sets").

Here, the state court TRO was entered on February 17, 2011, allegedly five minutes after Defendants removed the case. The state court TRO expired on March 3, 2011. Nothing in the record suggests that Plaintiff requested extension of the state court TRO in this Court. After removal, Plaintiff's request for a TRO before this Court did not occur until the filing of the instant motion (July 18, 2011). As such, the state court TRO enjoining Defendants from proceeding to foreclose on Plaintiff's home had expired. After its expiration, the filing of a summary proceeding on May 6, 2011, is not in clear violation of the state court TRO or an order by this Court. Because Defendants did not violate a specific court order, the Court finds holding Defendants in civil contempt unwarranted.

## B. PLAINTIFF

Plaintiff's counsel acknowledges that he failed to inform the Court of the state court TRO in the parties' jointly-filed case summary and at the scheduling conference. Plaintiff's counsel, however, maintains that his mistake does not rise to the level of civil contempt. The Court agrees with Plaintiff's counsel. Although Plaintiff's counsel did not inform the Court of the state court TRO, this does not appear to defy an order of this Court. The Court finds that Plaintiff's counsel's actions are not of a nature to hold him in civil contempt.

## VI. CONCLUSION

Accordingly, for the reasons set forth above, IT IS HEREBY ORDERED that Plaintiff's request for a preliminary injunction [dkt 11]is GRANTED, and the Court hereby ORDERS that Defendants are immediately:

enjoined, directly or indirectly from evicting Plaintiff from her home located at 2886 Genes, Auburn Hills, Michigan 48326, until further order of this Court.

IT IS FURTHER ORDERED that Plaintiff is:

required to pay Defendant Wells Fargo a monthly installment payment of $403.00. Plaintiff's first payment is due on September 1, 2011, and each monthly payment thereafter will be made in accordance with the terms and time lines in the TPP until further order of this Court.

IT IS FURTHER ORDERED that neither parties' counsel is held in civil contempt. Nonetheless, counsel in this case should understand that this is a warning that future unfavorable conduct by the parties, or their counsel, may result in the issuance of sanctions.

IT IS SO ORDERED.

                                             S/Lawrence P. Zatkoff
                                             LAWRENCE P. ZATKOFF
                                             UNITED STATES DISTRICT JUDGE

Dated: August 24, 2011

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on August 24, 2011.

                                             S/Marie E. Verlinde
                                             Case Manager
                                             (810) 984-3290