**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

PATRICIA BOLONE,

      Plaintiff,                           Case No. 11-10663

v.                                       Hon. Lawrence P. Zatkoff

WELLS FARGO HOME MORTGAGE, INC., and
FEDERAL HOME LOAN MORTGAGE CORP.,

      Defendants.

_____/

## OPINION AND ORDER

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on March 14, 2012.

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

## I. INTRODUCTION

This matter is before the Court on Defendants' Motion for Judgment on the Pleadings and/or

Summary Judgment [dkt 21]. The parties have fully briefed the motion. The Court finds that the

facts and legal arguments are adequately presented in the parties' papers such that the decision

process would not be significantly aided by oral argument. Therefore, pursuant to E.D. Mich. L. R.

7.1(f)(2), it is hereby ORDERED that the motion be resolved on the briefs submitted. For the

reasons set forth below, Defendants' motion is GRANTED IN PART and DENIED IN PART.

## II. BACKGROUND

In July of 2003, Plaintiff Patricia Bolone, refinanced a mortgage on her home at 2886 Genes

Drive, Auburn Hills, Michigan, with Defendant Wells Fargo Home Mortgage, Inc. ("Wells Fargo").

Plaintiff subsequently lost her employment in 2007, and as of February of 2009, no longer made payments to Wells Fargo.  On June 1, 2009, she applied for a loan modification.  Effective April 1, 2010, Wells Fargo offered a Home Affordable Modification Program ("HAMP") Trial Period Plan ("TPP") to Plaintiff.

Commencing on April 1, 2010, the TPP consisted of three monthly installment payments of $403.00 from April to June.  The TPP ended the earlier of: "(i) the first day of the month following the month in which the last Trial Period Payment is due 7/1/2010 or (ii) termination of this Plan."  Plaintiff purportedly returned the necessary paperwork and signed the written TPP with a representative of Wells Fargo.  The representative of Wells Fargo also signed the TPP, however, the signature is illegible.

Pursuant to the TPP, Plaintiff was entitled to a permanent modification of her mortgage if:

> I am in compliance with this Loan Trial Period and my representations in Section 1 continue to be true in all material respects, then the Lender will provide me with a Loan Modification Agreement, as set forth in Section 3, that would amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage.[1]

The following paragraph states:

> I understand that after I sign and return two copies of this Plan to the Lender, the Lender will send me a signed copy of this Plan if I qualify for the Offer or will send me written notice that I do not qualify for the Offer.  This Plan will not take effect unless and until both I and the Lender sign it and Lender (sic) provides me with a copy of this Plan with the Lender's signature.[2]

The TPP further set forth a limitation on Wells Fargo's ability to foreclose on the property, stating

---

[1] The TPP has expressly defined "I" as "Patricia M Bolone" (Plaintiff), and "Lender" as "Wells Fargo Home Mortgage."

[2]  The language preceding this excerpt defined offer as "the offer described in this Plan."

"the Lender will suspend any scheduled foreclosure sale, provided I continue to meet the obligations under this Plan . . . ."  Under Section 3 of the TPP, the language identifies the process that Wells Fargo will undertake to determine the new payment under a permanent modification.  Section 3 further provides:

> If I comply with the requirements in Section 2 and my representations in Section 1 continue to be true in all material respects, the Lender will send me a Modification Agreement for my signature which will modify my Loan Documents as necessary to reflect this new payment amount and waive any unpaid late charges accrued to date.

It is undisputed that Plaintiff made the three payments under the TPP.  Wells Fargo also accepted two additional monthly payments of $403 for the months of July and August of 2010.  According to Plaintiff's testimony, she attempted to pay $403 for the month of September, but a representative of Wells Fargo told her that her home was sold on August 10, 2010.  Prior to the August payment, however, Wells Fargo alleges that it left three telephone messages with Plaintiff on July 14, 17, and 20, 2010, requesting updated proof of income documents.  Plaintiff purportedly failed to submit these requested documents.  On July 30, 2010, Wells Fargo notified Plaintiff by letter that she was denied a permanent modification for failing to provide the requested documents.  On August 10, 2010, Wells Fargo sold Plaintiff's home at a sheriff's sale, which was purchased by Defendant Federal Home Loan Mortgage Corporation ("Federal Home Loan").  The redemption period following the sheriff's sale has run.

On February 17, 2011, Defendants removed Plaintiff's case from the State of Michigan Oakland County Circuit Court.  In her Complaint, Plaintiff asserts three claims against Defendants: (Count I) breach of the TPP; (Count II) violations of Michigan mortgage and collection acts; and (Count III) conversion by defective foreclosure.  Plaintiff seeks to restrain Defendants from further

3

adverse actions against her, rescission of the sheriff's sale, actual damages, and to require Defendants to fulfill the TPP.  On July 21, 2011, the Court granted Plaintiff a temporary restraining order, setting a hearing to address Plaintiff's request for a preliminary injunction and ordering Defendants to not take any action to evict Plaintiff from her residence until further order of the Court.  Finding the briefs submitted by the parties adequate to address Plaintiff's request for a preliminary injunction, the Court adjourned the hearing and issued a written opinion on August 24, 2011.  The Court granted Plaintiff a preliminary injunction, finding that her breach of the TPP claim had a likelihood of success on the merits and leaving consideration of her remaining claims for a later juncture.  At the conclusion of discovery, Defendants filed the instant motion asserting that there was no genuine dispute of fact that all three of Plaintiff's claims fail as a matter of law.

## III. LEGAL STANDARD

### A. JUDGMENT ON THE PLEADINGS

Pursuant to Fed. R. Civ. P. 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." The Court's review under Fed. R. Civ. P. 12(c) is the same as the review under Fed. R. Civ. P. 12(b)(6).  *Jelovsek v. Bredesen*, 545 F.3d 431, 434 (6th Cir. 2008).  Under Fed. R. Civ. P. 12(b)(6), the Court must accept as true all factual allegations in the pleadings, and any ambiguities must be resolved in that plaintiff's favor.  *See Jackson v. Richards Med. Co.*, 961 F.2d 575, 577–78 (6th Cir. 1992).  While this standard is decidedly liberal, it requires more than a bare assertion of legal conclusions.  *See Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 319 (6th Cir. 1999).  Thus, the plaintiff must make "a showing, rather than a blanket assertion of entitlement to relief" and "[f]actual allegations must be enough to raise a right to relief above the speculative level" so that the claim is

"plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). *See also*

*Ashcroft v. Iqbal*, __ U.S. ___, 129 S. Ct. 1937, 1953 (2009).

In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), this Court may only

consider "the facts alleged in the pleadings, documents attached as exhibits or incorporated by

reference in the pleadings, and matters of which the [Court] may take judicial notice." 2 James Wm.

Moore et al., *Moore's Federal Practice* ¶ 12.34[2] (3d ed. 2000). If, in deciding the motion, the

Court considers matters outside the pleadings, the motion will be treated as one for summary

judgment pursuant to Fed. R. Civ. P. 56. *See* Fed. R. Civ. P. 12(d).

## B. SUMMARY JUDGMENT

When considering a motion for summary judgment, "[t]he court shall grant summary

judgment if the movant shows that there is no genuine dispute as to any material fact and the movant

is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S.

317, 322 (1986). A party must support its assertions by:

> (A) citing to particular parts of materials in the record, including
> depositions, documents, electronically stored information, affidavits
> or declarations, stipulations (including those made for purposes of the
> motion only), admissions, interrogatory answers, or other materials;
> or;
>
> (B) showing that the materials cited do not establish the absence or
> presence of a genuine dispute, or that an adverse party cannot
> produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

The moving party bears the initial burden of demonstrating the absence of any genuine

dispute as to a material fact, and all inferences should be made in favor of the nonmoving party.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party discharges its burden by

"'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004) (citing *Celotex*, 477 U.S. at 325)).

Once the moving party has met its initial burden, the burden then shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "[T]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient [to defeat a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## IV. ANALYSIS

### A. COUNT I: BREACH OF THE TPP

Defendants seek summary judgment on Plaintiff's breach of contract claim on four grounds:

(1)     Plaintiff's claim must fail because Plaintiff's breach of the TPP is based on HAMP, and HAMP does not provide for a private right of action against lenders who do not provide a loan modification;

(2)     Wells Fargo was not obligated to provide Plaintiff a permanent loan modification because she failed to submit requested proof of income documents to Wells Fargo;

(3)     Even if Plaintiff submitted the requested proof of income documents, the TPP does not require Wells Fargo to provide a permanent loan modification; and

(4)     Plaintiff breached the TPP first by failing to submit the requested proof of income documents and therefore is foreclosed from bringing her claim.

Plaintiff argues that Wells Fargo and Plaintiff entered into a written contract—the TPP. Plaintiff maintains that she adhered to the TPP, as opposed to Wells Fargo, who at the end of the TPP denied her a permanent loan modification and began foreclosure proceedings on her home.

6

Plaintiff asserts that she provided all requested documents to Wells Fargo. Plaintiff further asserts that she is not suing Defendants under HAMP, but is suing Wells Fargo under a state-law breach of contract theory based on Michigan law.

**1. Whether HAMP preempts or precludes Plaintiff's state-law claim?**

As a threshold matter, the Court must determine whether Plaintiff's claim is precluded by HAMP. While the Court acknowledges that HAMP does not create a private right of action to enforce its regulations, the Court finds that Plaintiff's claim is different than one asserted under HAMP. Instead of asserting her claim to enforce the regulations under HAMP, Plaintiff is seeking to enforce the TPP between Plaintiff and Wells Fargo. Plaintiff's state-law breach of contract claim, however, fails if HAMP preempts this type of state-law claim.

Defendants provide no argument directed at whether HAMP preempts a state-law breach of contract claim, arguing instead that HAMP provides no private right of action. Even so, based on the Court's own research and review of the cases cited by the parties, the Court does not find that HAMP preempts Plaintiff's state-law claim.[3] While the Sixth Circuit appears not to have addressed this issue, a decision by the Seventh Circuit and several decisions by other district courts guide this Court's conclusion. In addressing a similar context, the Seventh Circuit determined whether state-law claims were preempted under the Home Owner's Loan Act ("HOLA"). Similar to HAMP,

---

[3] Defendants cite to the Court several cases that support Defendants' position that Plaintiff's breach of contract claim is foreclosed by HAMP. *See Bourdelais v. JP Morgan Chase*, No 3:10CV670, 2011 WL 1306311, at *4–5 (E.D. Va. April 1, 2011); *Wigod v. Wells Fargo Bank, N.A.*, No. 10 CV 2348, 2011 WL 250501, at *4–5 (N.D. Ill. Jan. 25, 2011); *Vida v. One West Bank, F.S.B.*, No. 10-987, 2010 WL 5148473, at *3–4 (D. Or. Dec. 13, 2010). To the extent these cases support Defendants' position, the decisions are not mandatory authority for this Court. The Court further disagrees with the rationale used in the decisions to reach the conclusion that HAMP prevents state-law claims, such as Plaintiff's claim. The Court therefore declines to follow them.

HOLA regulates federal savings associations and provides no private right of action for enforcement of the statute. *In re Ocwen Loan Servicing, LLC Mortg. Servicing Litig.*, 491 F.3d 638, 642–44 (7th Cir. 2007). Most notably, the Seventh Circuit found that, despite HOLA providing exclusive authority to the Office of Thrift Supervision to "regulate the savings and loan industry," HOLA did not preempt basic state-law causes of actions. *Id.* at 643–44. The Seventh Circuit explained that it "would be surprising for a federal regulation to forbid the homeowner's state to give the homeowner a defense based on the mortgagee's breach of contract." *Id.*

As subsequent district courts have concluded, the Court finds that the Seventh Circuit's rationale is equally applicable to state-law claims for breach of contract under HAMP. *See Fletcher v. One West Bank, FSB*, 798 F. Supp. 2d 925, 931 (N.D. Ill. 2011) ("[W]ithout some explicit direction from Congress that it intended programs such as HAMP to have such preemptive force, the Court will not preclude Fletcher from pursuing her basic state common law remedies."); *Bosque v. Wells Fargo Bank, N.A.*, 762 F. Supp. 2d 342, 351–53 (D. Mass. 2011) (finding that plaintiffs sufficiently pleaded a breach of contract based on a purported breach of a TPP); *Darcy v. Citifinancial, Inc.*, No. 1:10-cv-848, 2011 WL 3758805, at *4 (W.D. Mich Aug. 25, 2011) (agreeing with the rationale in *In re Ocwen*, *Fletcher*, and *Bosque*, and holding that the plaintiff's state-law contract claim was not preempted or precluded by HAMP). Defendants have not cited to any provision under HAMP that preempts Plaintiff's state-law breach of contact claim. Thus, for the reasons discussed, the Court finds no basis upon which to hold that HAMP preempts Plaintiff's claim.

**2. Whether Plaintiff failed to submit requested proof of income documents?**

8

The Court turns to whether Plaintiff fails to state a breach of the TPP by Wells Fargo because she failed to meet all preliminary conditions under the TPP.  For Plaintiff to state a breach of contract under Michigan law,[4] the TPP must meet the essential elements of a contract.  *In re Brown*, 342 F.3d 620, 628 (6th Cir. 2003).  A contract requires parties competent to contract, proper subject matter, legal consideration, mutuality of agreement, and mutuality of obligation.  *Hess v. Cannon Twp.*, 696 N.W.2d 742, 748 (Mich. Ct. App. 2005).  After showing that a valid contract exists, the plaintiff must show: (1) the terms of the contract, (2) a breach of one or more of those terms, and (3) the injury to the plaintiff caused by the breach.  *Timmis v. Suzler Intermedics, Inc.*, 157 F. Supp. 2d. 775, 777 (E.D. Mich. 2001) (citing *Webster v. Edward D. Jones & Co., L.P.*, 197 F.3d 815, 819 (6th Cir. 1999)).

The Court first finds that Plaintiff has shown that the TPP is a valid contract, subject to the terms and conditions stated in the TPP.  *See Darcy*, 2011 WL 3758805, at *5 ("We conclude that the TPP is a contract between the parties, subject to the terms and conditions stated in the document that Plaintiff accepted by signing . . . ."); *Bosque*, 762 F. Supp. 2d at 351–53 (finding that trial modification plans are valid contracts supported by consideration due to the additional conditions in the TPP that are imposed on the home buyer).  It is further undisputed that Plaintiff made the three required payments under the TPP.  The Court also finds that Plaintiff suffered an injury if she can establish that Wells Fargo breached the TPP.  As a result of denying Plaintiff a modification, her

---

[4] The Court's jurisdiction over this case is based on diversity jurisdiction.  As such, the Court must apply the choice-of-law provisions of the forum state, *i.e.*, Michigan's choice-of-law provisions. *NILAC Int'l Mktg. Grp. v. Ameritech Servs., Inc.*, 362 F.3d 354, 358 (6th Cir. 2004).  Applying such provisions, the Court will use Michigan substantive law because there is neither evidence of a substantial relationship between another state and the TPP nor evidence that Michigan law would conflict with another state's law, of which that state has an interest greater than Michigan.  *See id.*

home was foreclosed on and purchased by Federal Home Loan at a sheriff's sale. While the Court has entered a preliminary injunction preventing Defendants from evicting Plaintiff during this proceeding, Plaintiff will suffer injury if evicted from her home.

Having determined that the TPP is a contract, Defendants' argument asserts that Wells Fargo rightfully denied a permanent loan modification because Plaintiff failed to comply with the terms of the TPP by not submitting proof of income documents. The Court finds that a genuine dispute of fact exists as to whether Plaintiff provided all of the requested proof of income documents to Wells Fargo because the parties have submitted conflicting evidence. Plaintiff has provided her Affidavit and deposition testimony, wherein she states that she provided all documents to Wells Fargo that it requested. She further testified that she was not contacted by Wells Fargo in July regarding proof of income documents. Contrary to Plaintiff's evidence, Wells Fargo has produced two exhibits that demonstrate that Plaintiff failed to provide proof of income documents upon Wells Fargo's July request.

The first exhibit contains two case file records created on January 20 and 27, 2011. The January 20th record contains an entry stating: "Mtgr approved for HAMP trial on 2/23/10, for the months of April, May and June. Mtgr asked to provide updated POI on 7/14/10, 7/17/10 and 7/20/10. As no docs rcvd file removed on 7/30/10. Fcl sale occurred on 8/10/10." The second case record contains a similar entry, stating: "This file is being denied for any loan mod options and for a FCL Recession. The borrower was reviewed for Hamp and never turned in requested docs [and] then never sent in requested docs after that to restart a new review." Both entries purportedly establish that a representative of Wells Fargo contacted Plaintiff on the above dates for updated proof of income documents, which were not received. As a result, the permanent loan modification

10

was denied and Wells Fargo proceeded to foreclosure.

The second exhibit is a letter that Sandy Johnson, Executive Mortgage Specialist for Wells Fargo, sent to Plaintiff's counsel in response to a complaint filed with the Office of the Comptroller of the Currency regarding Plaintiff's loan modification.  According to the letter, "Wells Fargo . . . made three call attempts to request the documentation from [Plaintiff] on July 14, 2010, July 17, 2010, and July 20, 2010, of which messages were left advising [Plaintiff] to contact [Wells Fargo]. As [Plaintiff] did not provide us with the necessary documentation as requested, we were unable to approve HAMP for the loan."

Neither party disputes that the TPP requires Plaintiff to provide Wells Fargo with proof of income documents upon Plaintiff's request for a loan modification and if Wells Fargo requests additional documents throughout the trial payment period.  Based on the parties' evidence, there is, however, a question of fact regarding Plaintiff's compliance with the TPP's requirement to submit proof of income documents.  According to the June 30, 2010, denial letter, Wells Fargo denied Plaintiff a permanent loan modification because Plaintiff did not provide the documents requested. Because Plaintiff's failure to submit the requested documents is a basis upon which Wells Fargo denied Plaintiff a permanent loan modification, if the documents were submitted as Plaintiff states, she may have been entitled to a permanent loan modification.  Thus, Wells Fargo's denial of the permanent loan modification may be a breach of the TPP.  *See Williams v. Geithner*, No. 09-1959, 2009 WL 3757380, at *3 (D. Minn. Nov. 9, 2009) (finding that "[i]f the borrower remains current throughout the trial period, the servicer must then provide a loan modification"); *Wells Fargo v. Meyers*, 913 N.Y. S. 2d. 500, 504 (Nov. 10, 2010) (finding that homeowners that complied with all requirements of a trial modification plan were entitled to compel specific performance of the

modification agreement by Wells Fargo).    Accordingly, there is a genuine dispute of fact as to whether a rational juror would find that Plaintiff submitted the requested proof of income documents, in compliance with the terms of the TPP, and whether Wells Fargo breached the TPP.

**3.  Whether Wells Fargo is obligated to provide Plaintiff a permanent loan modifications if she satisfied all preliminary conditions?**

Even assuming Plaintiff submitted the requested documents, Defendants argue that the plain terms of the TPP do not obligate Wells Fargo to make a permanent loan modification.  Defendants point the Court to Section 2.F of the TPP, which provides:

> If prior to the Modification Effective Date, (i) the Lender does not provide me a fully executed copy of this Plan and the Modification Agreement; (ii) I have not made the Trial Period payments required under Section 2 of this Plan; or (iii) the Lender determines that my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Plan will terminate.  In this event, the Lender will have all of the rights and remedies provided by the Loan Documents, and any payment I made under this Plan shall be applied to amounts I owe under the Loan Documents and shall not be refunded to me.

Defendants emphasize the language that follows the third requirement, stating that the loan documents will not be modified if Plaintiff's representations are no longer true and Wells Fargo then retains its rights and remedies as stated in the loan documents.

The Court is unconvinced by Defendants' argument. As provided in the third requirement of section 2.F, Plaintiff's failure to provide true and correct information as set forth in Section 1 of the TPP provides a basis to deny Plaintiff a permanent loan modification.  There is, however, a genuine dispute of fact as to whether Plaintiff provided Wells Fargo the requested proof of income documents to verify that her representations in Section 1 were true and correct.  Thus, Wells Fargo's obligation to provide Plaintiff a permanent loan modification is contingent on whether Plaintiff

provided these documents.  The Court therefore denies summary judgment in favor of Defendants

on Plaintiff's breach of contract claim due to this genuine dispute of fact.

Furthermore, Michigan recognizes that in every contract in which performance is left to a

party's discretion, such discretion must be exercised honestly and in good faith.  *Ferrell v. Vic

Tanny Intern., Inc.*, 137 Mich. App. 238, 243 (Mich. Ct. App. 1984) (quoting *Burkhardt v. City

National Bank of Detroit*, 57 Mich. App. 649, 652 (1975)); *see also Lowe's Home Centers, Inc. v.

LL & 127, LLC*, 147 Fed. App'x 516, 523–24 (6th Cir. 2005) ("[W]here the manner of performance

under a contract is left to the discretion of a party, that party may breach the contract by exercising

its discretion in bad faith.") (applying Michigan law).  The Court therefore finds that Wells Fargo

had to exercise its discretion honestly and in good faith.  Having determined that a genuine dispute

of fact exists as to whether Plaintiff submitted the proof of income documents, Defendants must

come forward with a different good faith basis to deny a permanent loan modification to be granted

summary judgment.  Defendants have provided none.

In fact, such is evident by Defendants' motion and briefs, wherein Defendants' repeatedly

argue that Plaintiff's failure to provide the requested proof of income documents was Wells Fargo's

basis for denying Plaintiff a permanent loan modification.  Wells Fargo's own records indicate that

because "[Plaintiff] did not provide us with the necessary documentation as requested, we were

unable to approve HAMP for the loan."  Additionally, the June 30, 2010, denial letter includes

similar language, stating: "We are unable to offer you a Home Affordable Modification because you

did not provide us with the documents we requested."  Failing to substantiate some other good faith

basis to deny Plaintiff a modification, the Court rejects Defendants' argument.

Moreover, the language in the TPP also counters Defendants' argument and evidences that

13

if Plaintiff met the preliminary conditions then Wells Fargo would continue forward with offering

Plaintiff a permanent loan modification. The introductory paragraph of the TPP reads:

> If I am in compliance with this Loan Trial Period and my
> representations in Section 1 continue to be true in all material
> respects, then *the Lender will provide me with a Loan Modification
> Agreement*, as set forth in Section 3, that would amend and
> supplement (1) the Mortgage on the Property, and (2) the Note
> secured by the Mortgage.

(emphasis added).  Similarly demonstrating that if Plaintiff met the preliminary conditions under the

TPP then Wells Fargo would continue forward with offering a permanent loan modification, Section

2.G. states:

> I understand that the Plan is not a modification of the Loan
> Documents and that the Loan Documents will not be modified unless
> and until (i) I meet all of the conditions required for modification, (ii)
> I receive a fully executed copy of a Modification Agreement, and (iii)
> the Modification Effective Date has passed.  I further understand and
> agree that the Lender *will not be obligated* or bound to make any
> modification of the Loan Documents *if I fail to meet any one of the
> requirements under this Plan.*

(emphasis added).  Furthermore, Section 3 provides that:

> *If I comply with the requirements* in Section 2 and my representations
> in Section 1 continue to be true in all material respects, the Lender
> *will* send me a Modification Agreement for my signature which *will*
> modify my Loan Documents as necessary to reflect this new payment
> amount and waive any unpaid late charges accrued to date.

(emphasis added).

Reviewing the language in the TPP, the Court is unconvinced that Wells Fargo was not

obligated to provide Plaintiff a permanent loan modification if Plaintiff satisfied all conditions of

the TPP.

**4. Whether Plaintiff was the first party to breach the TPP?**

14

Defendants contend that Plaintiff's claim still fails because the party who substantially breaches the contract first may not "maintain an action against the other contracting party for his subsequent breach or failure to perform." *Able Demolition v. Pontiac*, 275 Mich. App. 577, 585 (Mich Ct. App. 2007). While the Court acknowledges the first breach doctrine under Michigan law, whether Plaintiff substantially breached the TPP is in turn dependant on whether Plaintiff provided the requested proof of income documents. As the Court has determined, whether Plaintiff provided the requested proof of income documents is a question of fact for the jury to decide based on the parties' conflicting evidence. Therefore, Defendants' final argument is also insufficient to warrant summary judgment in their favor.

**5. Conclusion**

For the reasons stated above, the Court has determined that HAMP does not preempt or preclude Plaintiff's state-law breach of contract claim. The Court further finds that the TPP is a valid contract and Plaintiff has asserted a plausible claim for relief as to Wells Fargo's purported breach of the TPP. Accordingly, the Court denies Defendants summary judgment on Plaintiff's claim for breach of the TPP because there is a genuine dispute of fact whether Plaintiff satisfied the preliminary conditions set forth in the TPP.

**B. COUNT II: VIOLATION OF MICHIGAN'S MORTGAGE AND COLLECTION ACTS**

The Court next considers whether Plaintiff has stated a plausible claim for relief under Count II of her Complaint. She first alleges that Wells Fargo is a "regulated person" under M.C.L. § 445.1651. She then alleges that representatives of Wells Fargo "made inaccurate, misleading, untrue or deceptive statements or claims in communications to collect a debt while communicating with Plaintiff" in violation of M.C.L. § 445.252(e). Plaintiff further alleges that "the sheriff's sale

15

of Plaintiff's home in violation of the TPP agreement constituted an abusive method of debt collection, in violation of [M.C.L. §] 445.252(n)." She makes no allegations against Federal Home Loan.

The Court first notes that Plaintiff cites to two statutory sections in Count II of her Complaint—M.C.L. § 445.1651, *et seq.* and M.C.L. § 445.252. The two statutes actually reference two different acts. M.C.L. § 445.1651 identifies Michigan's Mortgage Brokers, Lenders, and Servicers Licensing Act ("MBLSLA"), whereas M.C.L. § 445.252 references Michigan's Regulation of Collection Practices Act ("RCPA"). The Court therefore will analyze Count II of Plaintiff's Complaint under both acts.

**1. Michigan Mortgage Brokers, Lenders, and Servicers Licensing Act**

Defendants argue that Plaintiff's claim under the MBLSLA fails as a matter of law because the Act does not apply to depository financial institutions such as Wells Fargo, which is a federally chartered bank. Plaintiff argues that if the Michigan legislature meant to exclude companies like Wells Fargo that are subsidiaries of a national bank or owned by a national bank, the legislature would have explicitly stated such.

The Court agrees with Defendants. Section 445.1675(a) of the MBLSLA states that the Act does not apply to "[a] depository financial institution whether or not the depository financial institution is acting in the capacity of a trustee or fiduciary." A "depository financial institution" includes "a state or nationally chartered bank, a state or federally chartered savings and loan association, savings bank, or credit union, or an entity of the federally chartered farm credit system." M.C.L. § 445.1651a(f). According to an Affidavit of David Hulet, paralegal for Wells Fargo Bank, N.A., Wells Fargo Home Mortgage (the named defendant in this action) is a division of Wells Fargo

16

Bank, N.A.  Plaintiff cites to no evidence to support her allegation that Wells Fargo is not a division of Wells Fargo Bank, N.A. and instead a "separately incorporated mortgage company that is owned by a national bank."  Wells Fargo is therefore exempt from the MBLSLA because Wells Fargo Bank, N.A. is a national banking association chartered under the National Bank Act and Wells Fargo Home Mortgage is merely a division of it.  *See Benford v. CitiMortgage, Inc.*, No. 2011 WL 5525942, at *3 (E.D. Mich. Nov. 14, 2011) (finding that the MBLSLA applies to "national banking operating subsidiaries only to the extent that they apply to the parent national bank").  Accordingly, Defendants are granted summary judgment on Count II of Plaintiff's Complaint to the extent that Plaintiff bases her allegations on the MBLSLA.

## 2. Michigan Regulation of Collection Practices Act

Defendants assert that Plaintiff's bare legal conclusions alleged in Count II are insufficient to satisfy the requisite pleading standard under Fed. R. Civ. P. 12(b)(6) and therefore also fail to state a claim under the RCPA.  Defendants argue that the only factual detail Plaintiff has provided was during her deposition, wherein she testified that a representative of Wells Fargo told her that it had received everything and she could pay $403.00 per month in accordance with the TPP.  Plaintiff maintains that Wells Fargo is liable under the RCPA.  Plaintiff contends, while she was attempting to obtain a HAMP loan modification, Wells Fargo made inaccurate, misleading, untrue and deceptive statements to Plaintiff in violation of section 445.252(e) of the RCPA.  Plaintiff also alleges in her Complaint that the sheriff's sale of her home was an abusive method of debt collection under section 445.252(n) of the RCPA.

Under the RCPA, a "regulated person" shall not make "an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt."  M.C.L. § 445.252(e).  A

17

"regulated person" is also prohibited from "using a harassing, oppressive, or abusive method to collect a debt." M.C.L. § 445.252(n). The RCPA provides that a "regulated person" includes "a state or federally chartered bank when collecting its own claim." M.C.L. § 445.251(g)(ii). The RCPA permits a person who suffers an injury . . . due to a violation of the Act to bring an action for damages or other equitable relief. M.C.L. § 445.257.

Applying the RCPA to Plaintiff's Count II, the Court finds that Plaintiff fails to state a claim that Wells Fargo made inaccurate, misleading, untrue, or deceptive statements to collect a debt that *caused* Plaintiff to suffer an injury. The Court acknowledges that Wells Fargo is a division of a federally chartered bank and therefore is a "regulated person" within the meaning of the RCPA. The Court, however, finds that Plaintiff's testimony that a Wells Fargo representative told her that everything was "all set" is insufficient to show that such statements caused Plaintiff injury. Even assuming the statements were made, there is no basis to find that Plaintiff was injured, i.e., that she was unable to obtain a permanent loan modification because she followed the representative's statements. Based on Plaintiff's testimony, the conversation with the representative occurred before Plaintiff made the first payment under the TPP. There is no testimony that the representative told Plaintiff to not submit any documents to Wells Fargo if it so requested. Thus, even if Plaintiff continued to make monthly payments of $403.00, the statements provide no basis for Plaintiff to not submit the proof of income documents in July (after all required TPP payments were paid) when Wells Fargo purportedly requested. No causal relationship exists between the representative's statements and Wells Fargo's decision to not offer a permanent loan modification. Accordingly, the Court finds as a matter of law that Wells Fargo did not violate § 445.252(e) of the RCPA.

As to Plaintiff's claim that the sheriff's sale was a violation under § 445.252(n) of the RCPA,

18

the Court does not find that a sheriff's sale of Plaintiff's home fits within the plain language of § 445.252(n). Section 445.252(n) only prohibits harassing, oppressive, or abusive methods to collect a debt. Foreclosure by advertisement, the avenue pursued by Wells Fargo on Plaintiff's home, is authorized by Michigan statute. *See* M.C.L. §§ 600.3208, 600.3212. Similar to foreclosure by advertisement, a sheriff's sale of Plaintiff's home is also authorized by Michigan statute. *See* M.C.L. §§ 600.3216, 600.3220. Under the circumstances of this case, the Court does not find that a statutorily authorized sheriff's sale pursuant to a statutorily authorized foreclosure is a harassing, oppressive, or abusive collection method within the meaning of the RCPA. Accordingly, Defendants are granted summary judgment on Plaintiff's Count II of her Complaint to the extent that it relies on the RCPA. Having previously determined that Plaintiff also failed to state a claim under the MBLSLA, Plaintiff's Count II is dismissed in its entirety.

## C. COUNT III: CONVERSION BY DEFECTIVE FORECLOSURE

Plaintiff alleges that Defendants wrongfully converted her home by a defective foreclosure sale notice. Plaintiff argues that no provision of the Michigan foreclosure laws allows Defendants to include the following language in the notice:

> ATTN PURCHASERS: This sale may be rescinded by the foreclosing mortgagee. In that event your damages, if any shall be limited solely to the return of the bid amount tendered at sale, plus interest.

As a result, Plaintiff argues that the notice language would diminish third-parties from attempting to purchase her residence because they would be uncertain as to obtaining title. Plaintiff concludes that this makes the notice materially defective and the foreclosure voidable.

Plaintiff's claim fails for three reasons. First, a claim for conversion involves an act of wrongfully exerting dominion over another's *personal property* that is inconsistent with the other

19

person's rights. *Thoma v. Tracy Motor Sales, Inc.*, 360 Mich. 434, 438 (1960). Plaintiff's home is considered real property—not personal property—and therefore outside of the scope of a conversion claim. Second, Plaintiff cites to no authority that the additional language in the foreclosure notice renders the foreclosure notice legally defective. As Defendants point out, M.C.L. § 600.3212 sets forth the information that must be in a foreclosure notice. While setting forth the information that must be in a foreclosure notice, the provision does not state that Defendants' additional language is prohibited from being in the foreclosure notice. Third, even assuming the foreclosure notice was defective, Plaintiff has provided no evidence to support her allegations that the foreclosure notice had a negative effect on third-party purchasers. Accordingly, Plaintiff's claim for conversion in Count III fails as a matter of law. Defendants are granted summary judgment on Count III of Plaintiff's Complaint.

## V. CONCLUSION

Accordingly, for the reasons set forth above, IT IS HEREBY ORDERED that Defendants' Motion for Judgment on the Pleadings and/or Summary Judgment [dkt 21] is GRANTED IN PART and DENIED IN PART.

IT IS FURTHER ORDERED that Plaintiff's Count II and Count III of her Complaint are hereby DISMISSED.

IT IS FURTHER ORDERED that the parties are to appear for a Final Pretrial/Settlement Conference at **9:30 A.M., May 8, 2012**, at 526 Water Street, Port Huron, MI. All counsel must be present, as well as the clients and or those with full authority to engage in settlement negotiations. The parties are to comply with all rules and procedures set forth in the Scheduling Order [dkt 7].

IT IS SO ORDERED.


                                    s/Lawrence P. Zatkoff
                                    LAWRENCE P. ZATKOFF
                                    UNITED STATES DISTRICT JUDGE

Dated:  March 14, 2012

                        CERTIFICATE OF SERVICE

        The undersigned certifies that a copy of this Order was served upon the attorneys of record
by electronic or U.S. mail on March 14, 2012.


                                    s/Marie E. Verlinde
                                    Case Manager
                                    (810) 984-3290